IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CAO GROUP, INC., <br><br> Plaintiff, <br> v. <br><br> FIRST MEDICAL INFECTION CONTROL ASSOCIATES, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Case No. 2:15-cv-00698-DB <br><br> District Judge Dee Benson |

Before the Court is Defendant, First Medical Infection Control Associates, Inc.'s ("First Medica") Motion for Partial Summary Judgment. (Dkt. No. 26.) Having reviewed the parties' briefs and the relevant law, the Court renders the following Memorandum Decision and Order.[1]

## BACKGROUND

First Medica's Motion for Partial Summary Judgment involves the application of the equitable defense of laches. First Medica claims that as early as 2006, Plaintiff, CAO Group, Inc. ("CAO") knew First Medica was possibly infringing on CAO's patents. (Dkt. No. 26, p. ii.) However, First Medica claims that CAO waited nearly nine years after discovering its potential claims against First Medica to file a lawsuit. (*Id.*)

CAO is a Utah corporation that "designs, develops, manufactures, and markets various products for use in the dental industry, including . . . dental curing lights." (Dkt. No. 2, ¶ 8.) CAO has applied for and received numerous patents for its dental curing lights technology. (*Id.* at ¶¶ 10–14.) First Medical also "develops, markets, and/or manufactures a number of products of the dental industry, including dental curing lights that include light emitting diodes." (*Id.* at ¶

---

[1] Pursuant to DUCivR 7-1(f), the Court elects to determine Defendant's Motion for Partial Summary Judgment on the basis of the written memorandum.

1

15.)  Specifically, First Medica manufactures and sells the "LED Blast™" dental curing light product.  (*Id.* at ¶ 16.)

In December 2006, CAO sent First Medica a letter stating that CAO "recently became aware" of First Medica's LED Blast™ products.  (Dkt. No. 26, Ex. A.)  CAO suggested that First Medica "review serval of CAO Group's issued patents and consider entering into a license agreement" to avoid infringing on CAO's patents.  (*Id.*)

On February 16, 2007, First Medica sent a letter to CAO explaining that First Medica did not believe it was infringing on CAO's patents.  (Dkt. No. 26, Ex. B.)  Additionally, First Medica invited CAO to explain why it believed First Medica's products were infringing.  (*Id.*)

On April 2, 2007, CAO sent First Medica a letter analyzing why CAO believed First Medica's "LED Blast curing light product" infringed on CEO's U.S. Patent 6,719,559.  (Dkt. No. 26, Ex. C.)  Additionally, CAO recommended that the companies' CEOs meet to discuss the possibly infringing products.  (*Id.*)

After CAO's April 2, 2007, letter, CAO did not attempt to further contact First Medica.  Rather, on September 28, 2015, CAO filed the above captioned lawsuit claiming First Medica was infringing on CAO's U.S. Patent Nos. 6,719,559, 6,755,648, 6,783,362, 6,926,524, and 6,971,875.  (Dkt. No. 2, ¶¶ 20, 29, 37, 45, 53.)

The parties do not dispute that from 2007 to 2015, CAO was continuously engaged in patent infringement litigation with other parties in an attempt to enforce CAO's curing light patents.  (Dkt. No. 35, p. iv–v.)  CAO's CEO testified that "CAO has been enforcing the Patents-in-Suit, including curing light patents, continuously since 2006, though CAO has not been able to sue every infringer because of the demands on both time and financial resources required to do so."  (Cao Dec. at ¶ 7.)  CAO claims it "strategically filed suits against infringers much larger

15.)  Specifically, First Medica manufactures and sells the "LED Blast™" dental curing light product.  (*Id.* at ¶ 16.)

In December 2006, CAO sent First Medica a letter stating that CAO "recently became aware" of First Medica's LED Blast™ products.  (Dkt. No. 26, Ex. A.)  CAO suggested that First Medica "review serval of CAO Group's issued patents and consider entering into a license agreement" to avoid infringing on CAO's patents.  (*Id.*)

On February 16, 2007, First Medica sent a letter to CAO explaining that First Medica did not believe it was infringing on CAO's patents.  (Dkt. No. 26, Ex. B.)  Additionally, First Medica invited CAO to explain why it believed First Medica's products were infringing.  (*Id.*)

On April 2, 2007, CAO sent First Medica a letter analyzing why CAO believed First Medica's "LED Blast curing light product" infringed on CEO's U.S. Patent 6,719,559.  (Dkt. No. 26, Ex. C.)  Additionally, CAO recommended that the companies' CEOs meet to discuss the possibly infringing products.  (*Id.*)

After CAO's April 2, 2007, letter, CAO did not attempt to further contact First Medica.  Rather, on September 28, 2015, CAO filed the above captioned lawsuit claiming First Medica was infringing on CAO's U.S. Patent Nos. 6,719,559, 6,755,648, 6,783,362, 6,926,524, and 6,971,875.  (Dkt. No. 2, ¶¶ 20, 29, 37, 45, 53.)

The parties do not dispute that from 2007 to 2015, CAO was continuously engaged in patent infringement litigation with other parties in an attempt to enforce CAO's curing light patents.  (Dkt. No. 35, p. iv–v.)  CAO's CEO testified that "CAO has been enforcing the Patents-in-Suit, including curing light patents, continuously since 2006, though CAO has not been able to sue every infringer because of the demands on both time and financial resources required to do so."  (Cao Dec. at ¶ 7.)  CAO claims it "strategically filed suits against infringers much larger

than First Medica prior to the present lawsuit." (Dkt. No. 27, p. viii, ¶ 3.)  Additionally, First Medica does not dispute that it was aware of CAO's infringement lawsuits against other parties. (Dkt. No. 35, p. v, ¶ 6.)

## STANDARD OF REVIEW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In evaluating a motion for summary judgment, the Court reviews the facts in a light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor.  *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## DISCUSSION

"Laches is . . . an equitable defense to a claim for patent infringement."  *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992).  The laches defense is intended to "prevent patentees from 'intentionally [lying] silently in wait watching damages escalate, . . .  particularly where an infringer, if he had notice, could have switched to a noninfringing product.'"  *Id.* at 1033.  "[A] defendant who invokes laches as a defense must affirmatively prove (1) unreasonable and inexcusable delay and (2) prejudice resulting from that delay."  *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1293 (Fed. Cir. 1992); *Bridgestone/Firestone Research, Inc. v. Auto. Club De L'Quest De La France*, 245 F.3d 1359, 1361 (Fed. Cir. 2001).  "When raising the laches defense in the summary judgment context, the defendant also must establish that there was no genuine issue of material fact about the delay or

the prejudice." *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998) (citations omitted).

A defense of laches is presumed where a plaintiff "delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity." *A.C. Aukerman Co*, 960 F.2d at 1028.  Once a presumption of laches is established, the "presumption shifts to the patentee the burden of producing evidence, which if believed, would show that either the patentee's delay was reasonable or excusable under the circumstances or the defendant suffered neither economic nor evidentiary prejudice." *Wanlass*, 148 F.3d at 1337. Importantly, once the presumption is established, the defendant may remain "*utterly mute* on the issue of prejudice and nonetheless prevail[]." *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996) (emphasis in original).  However, if the patentee raises a "genuine issue" with respect to either factual element of a laches defense, "the presumption of laches is overcome" and the burden shifts back to the defendant to prove it is entitled to a defense of laches as a matter of law.  *A.C. Aukerman Co*, 960 F.2d at 1038; *see also Hemstreet*, 972 F.2d at 1293 (noting that if the plaintiff demonstrates a "genuine dispute as to whether the delay was excusable," the defendant is "put to its proof on both factors").

First Medica argues that CAO sat on its infringement cause of action for over nine years, which entitles First Medica to a presumption of a laches defense.  (Dkt. No. 26, p. ii.)  Moreover, First Medica claims CAO has failed to put forth any material dispute of fact to overcome the presumption of laches.  (Dkt. No. 35, p. ii.)  CAO counters that there is a genuine issue of fact as to whether CAO's delay was unreasonable and whether or not First Medica Suffered prejudice as a result of CAO's delay.  (Dkt. No. 27, p. iv–v.)  For the reasons that follow, the Court finds that CAO has successfully rebutted a presumption of laches.  Furthermore, First Medica has failed to

establish a defense of laches as a matter of law. There is a genuine dispute of material fact as to whether CAO unreasonably delayed filing suit against First Medica. Accordingly, First Medica's Motion for Partial Summary Judgment is denied.

### A. Excusable Delay

A presumption of laches "may be eliminated by offering evidence to show an excuse for the delay or that the delay was reasonable, even if such evidence may ultimately be rejected as not persuasive." *A.C. Aukerman Co.*, 960 F .2d at 1038. For example, a plaintiff's delay may be excused by demonstrating the plaintiff's involvement "in other litigation." *Hemstreet*, 972 F.2d at 1293 (citations omitted). "For other litigation to excuse a delay in bringing suit, there must be adequate notice of the proceedings to the accused infringer." *Vaupel Textilmaschinen KG v. Meccania Euro Italia S.P.A.,* 944 F.2d 870, 877 (Fed. Cir. 1991) (finding, plaintiff's delay in filing suit could be excused so long as "the evidence as a whole show[ed] that the accused infringer was in fear of suit"). Importantly, however, the equities "may or may not require that the plaintiff communicate its reasons for delay to the defendant." *A.C. Aukerman Co.*, 960 F.2d at 1033.

It is undisputed that CAO was involved in other patent litigation since 2007. (Dkt. No. 27, p. vii.) It is also undisputed that First Medica was aware that CAO was engaged in other infringement litigation and that CAO believed First Medica was infringing on CAO's patents. (Dkt. No. 35, p. v, ¶ 6.) Furthermore, CAO has proffered evidence that it was not economical or practical for CAO to pursue every infringing party in litigation at the same time. (Cao Dec. at ¶ 7.) Therefore, there are facts before the Court which would enable a reasonable jury to conclude CAO's delay was excusable. Accordingly, CAO has met its burden to eliminate the presumption of laches.

Moreover, First Medica has failed to establish, indisputably, that CAO's delay in bringing suit was unreasonable. According to First Medica, in the past nine years, CAO was involved in forty-one cases, twenty five of which were patent cases. (Dkt. No, 35, p. 4.) Furthermore, CAO's CEO testified that "CAO has been enforcing the Patents-in-Suit, including curing light patents, continuously since 2006, though CAO has not been able to sue every infringer because of the demands on both time and financial resources required to do so." (Cao Dec. at ¶ 7.) Therefore, CAO's CEO testified, CAO "strategically filed suits against infringers much larger than First Medica prior to the present lawsuit." (*Id.* at ¶ 8.) Accordingly, at this stage in the litigation, the Court cannot say that no reasonable juror could conclude CAO was unreasonable in delaying infringement litigation against First Medica.

### B. Material Prejudice

A defendant may satisfy the second prong of a laches defense by demonstrating that it suffered "prejudice at trial due to loss of evidence or memory of witnesses, [or] economic prejudice based on loss of time or money or foregone opportunity." *Bridgestone/Firestone Research, Inc.*, 245 F.3d at 1362. First Medica has proffered evidence of both economic and evidentiary prejudice; however, because First Medica has failed to prove unreasonable delay as a matter of law, the Court will not address whether First Medica has sufficiently established economic or evidentiary prejudice as a result of CAO's delay in filing suit.

### CONCLUSION

First Medica's Motion for Partial Summary Judgment on Laches (Dkt. No. 26) is DENIED. Additionally, the Court VACATES the hearing on First Medica's Motion for Partial Summary Judgment currently scheduled for September 7, 2016. The Court expresses no opinion as to whether, ultimately, First Medica's laches defense will be successful. The Court is merely

satisfied at this juncture that there are sufficient disputes of material fact that preclude the Court from finding laches as a matter of law.

Dated: August 31, 2016.

                BY THE COURT

                *Dee Benson*

                Dee Benson
                United States District Judge